Our third and final case is 24-1395, Grice v. Independent Bank. Mr. Wessler, whenever you're ready. Thank you, Your Honor. May it please the Court, Matthew Wessler for Jamila Grice. With the Court's permission, I'd like to reserve three minutes for rebuttal. The District Court in this case held that South Carolina's door-closing statute, Section 15-5-150, categorically excludes out-of-state class members from participating in a proposed class action in federal court. And on that basis alone, it refused to certify the class. That conclusion is wrong for three reasons. First, it directly conflicts with the explicit construction that the South Carolina Supreme Court gave to this statute in Farmer v. Monsanto, which is that Section 15-5-150, by its terms, and I'm quoting here, applies only to actions brought in South Carolina state courts and clearly does not apply to federal suits. If we agreed with you on that particular argument, then we need not go any farther. That's exactly right, Your Honor, and that's because there's a fundamental federalism principle at play in this case, which is that if a state rule does not apply in federal court, there is no conflict and the federal court would not perform any shady grove analysis or, for that matter, undertake a murky, eerie analysis about the potential relationship between the interests at play. Can I ask you about that, sir, and obviously with great respect for the South Carolina Supreme Court, but why would the South Carolina Supreme Court get to dictate to a federal court how it would apply or not a state statute? Sure, so I think with respect, Your Honor, that asks the wrong question. What the South Carolina Supreme Court was doing in Farmer was not attempting to dictate to a federal court how to apply any kind of eerie analysis. Indeed, in Farmer itself, the question was not a question about federal versus state forum or even, for that matter, about the conflict between federal or state law. All the South Carolina Supreme Court was attempting to do in Farmer was to supply a perpetration of its own state statute, and that is an antecedent question to the question about what a federal court is required to do when undertaking a conflict analysis between states. But is that an interpretation of the substance of the law or the procedural way in which it's going to be applied, depending on the parties and where you happen to be litigated? Again, I think this is neither—I would suggest it's not either a substantive or procedural gloss on the statute. All it is is the South Carolina Supreme Court construing the terms of the statute. Now, maybe if I understand your question, the statute itself, Section 155150, is a procedural South Carolina statute. And so the South Carolina Supreme Court was construing how that procedure applies. But when it comes to an eerie question, let's say— —suggested what the results should be based on one of our decisions. Yes. And that's fine. They're certainly entitled to do that. But I'm still wondering why we would be bound by that result. I mean, we might end up there for different reasons. Yeah. Well, I think you're bound by it because it reflects the state Supreme Court's substantive, to use your word, interpretation of the provision. And, you know, this court has said on multiple occasions, we as federal courts are bound to accept a state Supreme Court's interpretation of its own statutes. It is as if—if a state Supreme Court were to construe the statute, it is as if that construction was put into the statute no different from if the legislature had amended it. Yeah, I don't disagree with that principle of law. I just wonder about the application in this context when the question is, you know, who gets to decide and what are the rules of the road with respect to those decisions? Well, I think there's no question that the federal court gets to decide the conflict question. But the federal court, as it comes to a federal court in this context, for instance, assesses that question based on the meaning of the state law as that meaning has been fixed by the state Supreme Court. What if the South Carolina Supreme Court had said this rule actually binds a federal court? Sure. So, I mean, I think that would be a very different situation, and a federal court would not be forced to adhere to a state Supreme Court's attempt to deprive that federal court of a kind of eerie balancing. But that isn't what the South Carolina Supreme Court did. In fact, it actually did the opposite because it said the way that the federal courts have been interpreting this statute is incorrect. As a matter of state law, it only applies in state court. Right. It's doing the eerie balancing for us, but I'd like to try to do it myself, I guess, is the point. Yeah, except it's not. I would just respectfully push back on the idea that what is going on is an attempt to perform the eerie balancing itself. I think, you know, if, for instance, this court were to look at, you know, the Supreme Court's decisions on what federal and what a state court can do in the eerie context, what it has said is a state court can't label a state rule procedural so as to escape the way a federal court would perform an eerie balancing test. That we would suggest is entirely correct. But what we're talking about here is a threshold question about what the meaning of this state statute is and what the South Carolina Supreme Court has said. The argument is that the statement by the South Carolina Supreme Court is dicta. I know you're arguing that it is an authoritative decision by the court. Sure. But tell me why it's not dicta. Sure. So, I mean, it's not dicta for several reasons. First and foremost, it's the only reason that the South Carolina Supreme Court gave for rejecting an argument that one party had made in that case, which is that it was bound to follow this court's older Fourth Circuit cases interpreting the statute to apply in federal court. But also dicta, you know, is the kind of thing this court has said comes up in the context of a decision where it's cursory or it's a throwaway sentence or line. And here I think you have the South Carolina Supreme Court not doing this in any kind of offhanded way but explicitly taking up the question of what does this statute mean and supplying an unambiguous answer to that question. Now, I guess, Judge Benjamin, I will say, in our view, it doesn't even really matter whether you treat it as binding holding of the South Carolina Supreme Court or as dicta because ultimately what this court is required to do under, again, basic federalism principles is ask what the state Supreme Court would understand this state law or state rule to mean. And here you have an unambiguous answer to that question, which is that the South Carolina Supreme Court has said this statute doesn't apply in federal court. It only applies in state courts. And because regardless of the exact context in which that came up, this court ought to understand that that is the considered view of the state court. And as a consequence to that, as Judge Agee, you suggested at the beginning, there simply is no conflict between that state rule and anything that's happening in this case because we are in federal court. And so it just a fortiori doesn't apply here. I think, you know, independent, you know, in response beyond pushing aside to this question of whether or not the state rule applies in federal court has also asked this court to accept what I think is a basic category or about the way in which a federal court would actually perform the conflict analysis, even in the event that this state statute would actually apply. And what it says is, you know, the district court here was correct to undertake an eerie analysis. But I think that that really misses the core aspect of the conflict here, which is that we're not in a world in which a federal court is being asked to compare a state rule and a judge made federal rule. What we're talking about is a state statute that involves a question of capacity and federal rules of civil procedure. Rule 23, Rule 17. And in that situation, the Supreme Court in Shady Grove made very clear that a federal court doesn't actually have to get into the kind of murkiness of eerie. And instead, it simply asks, does the federal rule control the question at issue? And if so, it doesn't really matter what the state rule does. The federal rule has to control. So, and I'm glad you got there because I think that's at least where I'm a little bit more comfortable dealing with this issue. And with respect to the Supreme Court of South Carolina, I think we do refer to the issue of what the statute means in terms of capacity versus jurisdiction. And I think they said very clearly in Farmer that this is a statute that deals with capacity, not jurisdiction. And so we accept that. And then we look to the relevant rules in the federal sphere. We have Rule 17 and then Rule 23. And in your view, those rules answer the question. That's that's right, Your Honor. You don't actually have to go any further than that to ask, as the district court did here. You know, what are the how do I balance the countervailing interests between the federal rule or the or the state rule that that analysis? As I think both this court and pledger and the US Supreme Court in Shady Grove made clear simply doesn't apply when you're dealing with federal rules of civil procedure. It might if you're talking about judge made rules that are not enacted by Congress or, you know, are just kind of developed as a matter of common law. But in a in a in a federalist system where we. Both excuse me, Rule 17, both squarely control the key question at issue in this case. And once you get to that point, as this court and pledger made clear, that's the end of the inquiry. What is the argument that I think the argument they're making is that there is no conflict because the rule, because the state statute deals with the scope of capacity, Rule 23 does not. Yes, that's correct. I think, you know, in pleasure, this this court took up a similar kind of question. The US Supreme Court had a similar kind of argument. It confronted in Shady Grove where the other side came in and said, look, it's not exactly the same. You know, it doesn't exactly cover precisely in the same way that Rule 23 does in pleasure. It was a question about what was required to satisfactorily plead a claim. In both cases, what the court said was this is a functional analysis. It doesn't require splitting hairs finally about exactly the way in which the rule might be structured or the precise language that the rule is composed with. What matters is, does it functionally affect the same inquiry? And here you've got, I think, an undeniable conflict because Rule 20 under Rule 23, there is no capacity limitation in the way that 15 5 1 50 works. This case would be allowed to move forward under a straightforward analysis of Rule 23. But because of this door closing statute, applying it in federal court means it cannot. And that's a square functional conflict in exactly the way that that Shady Grove expects the inquiry to function. And the district court, by refusing to acknowledge that or perform that analysis, I think, ran afoul of both Shady Grove and this court's decision in pleasure. Ask you a question about there's an argument that. To the extent that Rule 23 can survive in different contexts, not necessarily maybe in South Carolina, but perhaps in other jurisdictions that it really isn't a problem, a conflict, because in theory, you could have class actions that don't include South Carolina residents. So is that a legitimate argument? I don't think so. Again, I think what the Supreme Court in Shady Grove made clear is that these federal rules are expected to have uniform application in federal court throughout the country. That's the entire purpose of a uniform set of rules. And so to have a kind of waxing and waning of the of the ability to bring the same case in federal court, depending on what state you're in, is inconsistent with the way that the rules are expected to function. Unless the court has any further questions, I'll reserve the rest of my time for rebuttal. Thank you very much. Morning, Your Honors. Mr. Nicely? Yes, sir. Go ahead. Jonathan Nicely and Nelson Mullins on behalf of Defendant Happily Independent Bank. And I'd be happy to start with the farmer analysis as this court started. It's actually kind of step two of the analysis because I agree with my co-counsel. The first question when you're dealing with a potential conflict between a rule and a state law is, does the rule govern or can they coexist? And then if you determine that they can coexist, then you go to the analysis to determine whether that state law applies. But because we have that statement from the state Supreme Court, I understand why my co-counsel start there. So I will start there as well and will say that that cannot bind this federal court. It is the federal court's job. The state Supreme Court says what the law of that state means. So if it says this is what the law means, I don't see under federalism how that conflicts with the federal court. It hasn't made a substantive decision. It hasn't made a procedural decision. It says the law means this. And if that's the case, we're done. I respectfully disagree that that is what the court was saying and farmer. They're not saying what the law means. They're saying, does it apply in a federal forum or not? And that is an eerie analysis. That is the federal court's job to conduct an eerie analysis. I think I need to do that. I mean, the Supreme Court says this is a state statute. The statute can only apply in state court, period. How do you get to Erie from that? So I can guarantee trust the Supreme Court of the United States said whether the state describes its laws is as substantive or procedural is not definitive. Right. That doesn't define our eerie analysis. We have to look past the way they're described and look at what the law is and what it is. So your theory, there would be no circumstance where a state Supreme Court could say what the law means. Regardless of the context. Because there would always be an area analysis, they can they can say what the law means. And I think Judge Diaz kind of parsed out that distinction. It means that it governs capacity. But what it doesn't mean, they can't define whether or not it applies in federal court. In fact, the Fourth Circuit has applied it in federal court. So they would I mean, it would effectively overrule the Fourth Circuit precedent as well. I think really. But we're bound when we're dealing with state law to follow the state Supreme Court, not our own decisions that are contrary to the state Supreme Court. Right. And I do want to point out what Judge Benjamin asked about as well, that this is pure dicta. I mean, this had nothing to do with the result in that case. There would be no occasion where a state Supreme Court would have to opine on what would apply in federal court. So it is dicta. It's not it's not the law of the state binding on this court to your question, Judge Agee. But I want to. So what difference does that make if the Supreme Court of a state says this is the law? Does it really make a difference? Whether it might be dicta in that case? Yes. And I want to get back to the point. They cannot define what law this court applies. And I want to kind of drive home what this would create in the eerie analysis, the eerie question that federal courts decide every day. You wouldn't just have to say, is it substantive? Is it procedural? What law applies? You'd have to ask the question, would the state Supreme Court. Say that this applies in federal court, what would they say about whether or not this applies? I describe it as a difference question. If it said, yeah, it applies in federal court. Well, then when you do have a federal jurisdictional issue, but if the state court says a state law only applies in state court. I'm still not seeing the nexus to Erie. Because it would eviscerate the eerie analysis when we determine what law this court applies. You apply the rules of Decision Act, the rules enabling you apply federal law to determine. But that's when there's a conflict. What's the conflict here? Okay, good. Good question. So that's the conflict is who has capacity to see. Well, I don't know if Erie applies, whether or not there's a conflict. Erie is what substantive law is going to apply to the case. I think irregardless of the conflict, that is what law applies to the causes of action. You get to Erie after analysis of whether there's a conflict between a federal rule and a state statute, which is. Let me. Describe an example and see if this might help, because it judges point is well taken, but I mean, if this were not a class action, it was simply a diversity action. Involving parties that would otherwise not be allowed to sue in South Carolina because of the door closing statute. It seems odd that we would say, well, South Carolina has said the door closing statute doesn't apply a different result in federal court simply because you happen to be in that venue. That doesn't seem to make sense to me. That's right. I would agree that does not make sense. And in fact, I will say below the plaintiff never took never raised this argument. They acknowledged that the door closing statute would apply absent the class action circumstance. They only raise the former issue and the objections to the magistrate's report and recommendation. So there was never even an issue in this case until very late, despite multiple levels of briefing. And that's a question of whether the door closing statute would apply in an individual suit. Well, let's assume that we are not clear exactly where we're going to end up on that issue. But let's see. Let's just let me get past that and we get to the issue of a conflict. You've got a problem there, I think. But maybe you can tell us why you don't. I hope I don't have a problem, Your Honor. So under Shady Grove, we asked whether the federal rule answers the question in dispute. And I think the Miss Grace, they want to frame the question much broader than it is. They want to frame the question is whether Rule 23 permits a nationwide class action. That's not the question in dispute. In my mind, the question in dispute is whether unnamed class members must satisfy capacity requirement. Understand that the question, who has the right to sue? Wouldn't that go under Rule 23? Well, I would say who has the right to sue is Rule 17. And Rule 17 directs you to stay long. So it kind of gets you back to South Carolina law, the law of the forum or the law of the resident of the plaintiff in some circumstances. So how would you differentiate this case from the New York statute and Shady Grove? I think it's very easy to differentiate, Judge Agee. So in Shady Grove, the lower courts, they didn't conduct Rule 23 analysis. There was no is there numerosity, commonality, typicality. They looked at the state statute and said this statute forbids class actions. So Rule 23 need not apply. In our case here, Rule 23 was applied. The lower courts applied the numerosity legal analysis. And the magistrate judge specifically found that Miss Christ's attempt to establish numerosity is thwarted by the door closing statute. Rule 23 applied and they work. They can coexist. The question you ask is, does the scope of the rule, is it sufficiently broad to cause a direct collision with the state law or implicitly control the issue before the court? And Rule 23, my co-counsel or my colleague made a comment about how there's no capacity limitation under Rule 23. I'm not really sure where that came from or what authority that is from. I don't know why there wouldn't be a capacity limitation under Rule 23. There's no indication that Rule 17 and Rule 23 don't coexist. There is, I would proffer, there is a capacity limitation in Rule 23. And because of that, you have to apply the state law for capacity under the door closing statute. So these two things easily coexist. It's not whether the class can be nationwide or not. It's whether it's the scope of the class who can satisfy the requirements under state law to state a claim. It's no different than a state statute of limitations. Rule 23 doesn't discuss statute of limitations. But clearly, the scope of the class must be limited based on who can satisfy the state law underlying the claim. Rule 23 doesn't discuss conflicts of laws, but we know all the time we have class actions that break out claims by state. Right. Because you can't assert a breach of express warranty class action under South Carolina law nationwide, irrespective of the door closing statute. It has to be limited. The scope of the class is always limited by application of state law. Now you've got me a little bit confused. Let me go back to the beginning. So neither, as I understand it, neither Rule 17 nor Rule 23 require capacity to sue in federal court. Do you disagree with that? I do disagree. Rule 17 does require. Or absent class members. Rule 17 says in all the circumstances, capacity is determined by the law of form. Tell me where it talks about absent class members. It does not specifically address absent class members, but it has a residual provision in all other circumstances. I don't know. I don't know if exactly says that, but it's in every other case. Right. For all of the parties, I think is how it describes it. And a couple of years ago, the Supreme Court took up the question of do absent class members have to have standing? And they said, yes, they do have to have standing. No different here. Rule 17, all other parties, capacity is determined by the law of the form, which I mean, this wasn't specifically addressed by the parties in the briefs. But, you know, Rule 17 then directs you to apply the door closing statute. There's no conflict. It is you're directed to apply the law of the form in that circumstance. So, yeah, and I apologize if I got you confused, Judge Agee. It's my overall point is Rule 23 and the door closing statute can easily coexist. I'm very happy to be Judge Agee, but I'm not. Yes, I apologize. I apologize. And I want to also say, so even if the court does find there is a conflict between Rule 23 and the door closing statute, that is not the end of the analysis. You then go on to the second step of Shady Grove and you ask, does the rule abridge, enlarge or modify a substantive right? And here that would. It would both enlarge non-resident plaintiff's abilities to be members of a class in South Carolina. And it would abridge independence right as a foreign entity to not be subject to suit by out-of-state to things that are not connected to the state of South Carolina. And I want to. I want to briefly, I guess, discuss this court's precedents and also how this district of South Carolina. Do you have a case that actually says that Rule 17B applies to representative not to class members who are not representative parties? I have not seen a case either way. Yes. So you're just you're just that's just your read of the statute. Yeah, I mean, it's it's it's the way Rule 17 is written. It says all other parties. And so if it's all, then it would apply to absent class members as well. I think the case all indicates that absent class members are not necessarily parties before a class is certified, but they do become parties once a class is certified. So they therefore cannot become a party if they do not have capacity to sue. Like I said, I think it's very similar to the standing analysis that Supreme Court recently decided a couple of years ago. The historical statute has been consistently applied by both the Fourth Circuit and the district courts within South Carolina for decades. And. The Supreme Court's kind of I call it throwaway language, just an offhand comment about its application. And federal courts should not change or upset that clear precedent of this court and how the district of South Carolina has applied that law. And if there's no further questions, I'll rest on my briefs. All right. Thank you very much. Thank you. Just a few brief points in rebuttal. Judge Diaz, you just asked whether my friend on the other side had any case suggesting that Rule 17's capacity rules have ever been applied to absent class members. And the answer is no. That's never been. There's not a single case anywhere that has ever done that. Rule 23 itself, Judge Benjamin, does include a specific reference to the scope of a class that's in Rule 23. C-1-3 actually asks the district court as part of its process to identify the class members. This court's decision in Pledger, I think, really illustrates the framework, assuming this court were to bypass what the South Carolina Supreme Court has said about the statute, the way that this works. In that case, the government who was attempting to impose an additional requirement on the rules of federal procedure based on state law said there is no conflict between the federal rules and the state statute because you can just do an additional thing when you're pleading a claim. This court in Pledger said no, that the introduction of an additional requirement that isn't required by the federal rules is in itself a conflict. I also think Pledger is useful for the basic principle that the reason the court identified a conflict in the first place between state law and the federal rules was, as the court said, because, quote, by its terms, the state rule applied in federal court. I would submit here that by its terms, 15-5-150 does not apply in federal court, and this court need go no further than that to resolve this case. Let me ask you again about capacity and Rule 17. Do you think that Rule 17 has anything to say about this case? No. Well, we don't think it does, because we think that there is no conflict at all. To the extent that one wants to think about whether there's a conflict between the state's capacity rules and the federal capacity rules, that in and of itself is a conflict because, in fact, it is not the catch-all provision that independent has suggested would even control in this case. That catch-all provision, 17-B-3, refers only to partnerships or entities. There is a different capacity provision, 17-B-1, that refers to individuals, which is the only kind of entity we're talking about here, absent class members, their people. That capacity provision does not adopt the rule that applies in South Carolina state court. It focuses on domicile, not residency, so there is a difference there. But our position most, I think, fundamentally is that there is a conflict between Rule 23 and what is going on with South Carolina's door-closing statute, and for that reason, it's Rule 23 that must control. All right, thank you very much. I want to thank both counsel for their arguments here this morning. We're going to come down and greet you, then we're going to recess the court and conference the cases, and then we'll come back and answer questions from the audience and or one of the faculty members. So, if you would, Madam Clerk. This Honorable Court stands adjourned. Sanidad and God save the United States and this Honorable Court.
judges: Albert Diaz, G. Steven Agee, DeAndrea Gist Benjamin